UNITED STATES, Appellee

v

ROBERT D. SIMPSON, Basic Airman, and BERNARD J. MAHER, Jr., Basic Airman, U. S. Air Force, Appellants

10 USCMA 543, 28 CMR 109

No. 12,789

Decided July 24, 1959

*Lieutenant Colonel Robert O. Rollman* argued the cause for Appellants, Accused. With him on the brief was *Lieutenant Colonel Sam F. Carter.*

*Major Fred C. Vowell* argued the cause for Appellee, United States.

With him on the brief were *Lieutenant Colonel Robert W. Michels* and *Lieutenant Colonel James R. Thorn.*

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused were tried by general court-martial convened at Kadena Air Force Base, Okinawa. Despite pleas of not guilty, they were convicted of a number of offenses which need not be detailed here, and each accused was sentenced to a dishonorable discharge, total forfeitures, and confinement at hard labor for five years. A board of review subsequently ordered a rehearing on the sentences and as a result thereof the term of confinement for each accused was reduced to two years, the discharges and forfeitures remaining unchanged. This sentence was in turn approved by the convening authority and the board of review.

During trial, at the close of the Government's case, defense counsel requested a fifteen minute recess. At the end of this period, he announced he would make no opening statement and he had no evidence to present. Shortly thereafter the law officer commenced his instructions to the court, and during his lengthy and complete statement on the evidence and the standard of proof required for conviction, he mentioned the concept of prima facie proof. This forms the basis of our present question, and we framed the issue as follows in our grant of accused's petition for review:

"Whether the accused were prejudiced by the instruction (R. 140) that:

'Prima facie proof of an essential element of an offense does not preclude the existence of a reasonable doubt with respect to that element. The court may decide, for instance, that the prima facie evidence presented does not outweigh the presumption of innocence. In law, prima facie evidence of a fact is sufficient to establish the fact, unless it is rebutted. . . . ' "

The first two sentences of the quoted portion of the instruction are taken verbatim from the discussion of reasonable doubt in paragraph 74a(3),

Manual for Courts-Martial, United States, 1951. The entire portion is contained in the instruction on reasonable doubt found ·in AFM 110–5, Court-Martial Instructions Guide.

Appellate defense counsel's argument attacking the quoted instruction as erroneous and prejudicial is essentially three-pronged. They contend that the instruction, and particularly the last sentence thereof, suggested a presumption of guilt, shifted the burden of proof to the accused, and required a lesser quantum of proof than the law demands.

The use of the term "prima facie" and a discussion of its legal ramifications has no place in a charge to a jury in a criminal case or to the members of a court-martial when they are about to deliberate on the findings of guilt or innocence, and should not be used. The primary duty of court members at that juncture is to determine on the basis of the evidence, or its absence, whether the guilt, if any, of the accused has been proved beyond a reasonable doubt. When determining guilt or innocence, this is the only standard with which they need be concerned. Moreover, members of a court-martial may not understand the meaning of "prima facie evidence of a fact," and the interjection for their consideration of questionable phrases and inappropriate theories may lead to confusion and uncertainty. To avoid any such result, we believe the instruction should be discarded, and a reference to a few decided cases will disclose that we are not alone in our thinking on this point. Several Federal courts have considered a similar question, and in McAdams v United States, 74 F2d 37 (CA8th Cir) (1934), we find the following statement:

"Where the government in the trial of a criminal case introduces sufficient evidence to take the case to the jury, it is frequently said that it has made out a 'prima facie' case; but we think that the words 'prima facie'

should be avoided in a charge to a jury, since they are not in common use among laymen and are likely to cause confusion of thought and misunderstanding."

A more lengthy discussion of the term prima facie in connection with the presumption of an accused's innocence and the burden of proof upon the Government may be found in Ezzard v United States, 7 F2d 808 (CA8th Cir) (1925). See also Chaffee v United States, 18 Wall 516 (US 1874). The vice of the instruction is well spelled out in those authorities, and we agree with the views therein expressed. Accordingly, we hold the law officer erred.

The foregoing holding requires a consideration of the question as to whether the accused were harmed by the error. In United States v Hatchett, 2 USCMA 482, 9 CMR 112, where one of the questions turned on the possible prejudice of an instruction on reasonable doubt, we stated:

". . . However, there is a well-understood rule of law, i.e., that instructions must be considered in their entirety and if, when gathered together by their four corners, they state the law properly and with sufficient clarity to be understood by the members of the court-martial, then they are not prejudicial even though one sentence may be technically incorrect."

When we apply this rule, we have no difficulty in concluding that the accused were not prejudiced by the ██ quoted portion of the charge in the case at bar, and reference to Chaffee v United States, supra, and other cited cases, will disclose entirely different charges to the triers of fact. In the instant case, repeatedly, both before and after the questioned instruction, the law officer charged the court members that unless they were convinced of guilt beyond reasonable doubt, the accused had to be acquitted. He cautioned them that the rule of reasonable doubt extended to every element of the offense and that such a doubt may arise from the evidence or lack thereof. He completed his instruction by stating: ˋ

"The court is further advised:

"First, that the accused must be presumed to be innocent until his guilt is established by legal and competent evidence beyond reasonable doubt;

"Second, that in the case being considered, if there is a reasonable doubt as to the guilt of the accused, the doubt shall be resolved in favor of the accused and he shall be acquitted;

"Third, that if there is a reasonable doubt as to the degree of guilt, the finding must be in a lower degree as to which there is no reasonable doubt, and

"Fourth, that the burden of proof to establish the guilt of the accused beyond a reasonable doubt is upon the Government."

The evidence to sustain the offenses of which the accused stand convicted is not in conflict and is compelling. The Government witnesses established the commission of crimes beyond a reasonable doubt, and both accused made pretrial confessions which were voluntary and given after full warning under Article 31. In addition, the record is entirely void of any evidence which in any way raises any doubt about the guilt of the accused. Their counsel on appeal do not claim otherwise, but they seek to apply the rule that when there are mutually inconsistent instructions and one is clearly prejudicial, the principle that instructions must be considered by their "four corners" does not apply. We accept that rule but, under the posture of this record, the instruction on prima facie evidence was not clearly prejudicial. A fair reading of the charge would convince even a confirmed skeptic that no reasonable person could listen to the instructions and possess any mental belief, except that the burden was placed squarely on the Government to prove every element of the offense beyond a reasonable doubt and that no finding of guilt could be returned unless the court was convinced of accused's guilt beyond a reasonable doubt. Moreover, even the questioned

charge, as well as the other instructions by the law officer, properly indicated the presumption of innocence must be negated by the Government's evidence beyond reasonable doubt. The emphasis and re-emphasis by the law officer on the correct burden of proof and weight of the evidence so overwhelms the single reference to prima facie evidence that the latter fades into insignificance and, consequently, we can say with assurance it had no measurable impact on the findings.

The decision of the board of review is affirmed.

Chief Judge QUINN concurs.

FERGUSON, Judge (dissenting):
I dissent.

Upon their pleas of not guilty, the accused were found guilty of housebreaking, various larcenies, and escape from confinement, in violation, respectively, of the Uniform Code of Military Justice, Articles 130, 121, and 95, 10 USC §§ 930, 921, and 895. Following a rehearing on the sentence directed by the board of review and later affirmance by that body of the findings and newly adjudged penalties, we granted review on the issue of whether the law officer erred prejudicially in instructing the court-martial that:

"Prima facie proof of an essential element of an offense does not preclude the existence of a reasonable doubt with respect to that element. The court may decide, for instance, that the prima facie evidence presented does not outweigh the presumption of innocence. *In law, prima facie evidence of a fact is sufficient to establish the fact, unless it is rebutted.*" [Emphasis supplied.]

The term *"prima facie"* means "at first sight; on the first appearance; on the face of it; so far as can be judged from the first disclosure." Black's Law Dictionary, 4th ed, page 1353. When applied as a measure of evidence, it means no more than that sufficient proof has been presented to make out a case for the decision of the jury. It is not the equivalent of proof beyond a reasonable doubt and does not require

the jury to return a verdict of guilty. Johnson v State, 95 Okla Cr 1, 237 P 2d 909.

In Chaffee v United States, 18 Wall 516 (US 1874), a remarkably similar charge was delivered to the jury. In reversing the cause and remanding it for a new trial, a unanimous Supreme Court stated:

· "The purport of all this was to tell the jury that, although the defendants must be proved guilty beyond a reasonable doubt, yet if the government had made out a prima facie case against them, not one free from all doubt, but one which disclosed circumstances requiring explanation, and the defendants did not explain, the perplexing question of their guilt need not disturb the minds of the jurors; their silence supplied in the presumptions of the law that full proof which should dispel all reasonable doubt. In other words, the court instructed the jury, in substance, that the government need only prove that the defendants were presumptively guilty, and the duty thereupon devolved upon them to establish their innocence, and if they did not they were guilty beyond a reasonable doubt.

"We do not think it at all necessary to go into any argument to show the error of this instruction. The error is palpable on its statement. All the authorities condemn it . . . The instruction sets at naught established principles, and justifies the criticism of counsel that *it substantially withdrew from the defendants their constitutional right of trial by jury, and converted what at law was intended for their protection—the right to refuse to testify—into the machinery for their sure destruction.*" [Emphasis supplied.]

In Lilienthal v United States, 97 US 237, 24 L ed 901, the same Court remarked:

"In criminal cases the true rule is that the burden of proof never shifts; that in all cases, before a conviction can be had, the jury must be satisfied from the evidence, beyond a reasonable doubt of the affirmative of the

**547**

issue presented in the accusation, that the defendant is guilty in the manner and form as charged in the indictment."

In Ezzard v United States, 7 F2d 808 (CA8th Cir) (1925), Judge Lewis pointed out that a *prima facie* case is unknown in criminal law and remarked pertinently that "In no condition of proof is it permissible to instruct a jury that it had become the duty of defendant to establish his innocence to obtain an acquittal." And in McAdams v United States, 74 F2d 37 (CA8th Cir) (1934), the use of the phrase "prima facie" in instructions to the jury concerning the effect of possession of recently stolen property was unhesitatingly condemned.

The foregoing authorities establish beyond question the validity of the accused's complaint that the █ law officer's quoted instruction shifted to them the burden of proof, suggested a presumption of guilt, and permitted the prosecution to meet a lesser standard of proof than that required by law. Indeed, one need go no further than the very words of the charge itself to perceive its substantially improper character. Although it purports to state that prima facie proof does not preclude the existence of a reasonable doubt, it also advises the court that "prima facie evidence of a fact is sufficient to establish the fact, unless it is rebutted." When these declarations are considered together, it is clear the jury was informed that no reasonable doubt of guilt could exist unless the *prima facie* evidence was rebutted. Hence, when the accused remained silent and no defense case was presented, the court members, in view of the quoted advice, had no choice but to return findings of guilty. Its effect was to presume accused's guilt from their silence, cast upon them the burden of proving their innocence, and to permit the prosecution to obtain its verdict on the basis that the evidence was sufficient, not beyond a reasonable doubt, but "at first sight." Thus, the accused's reliance upon their plea and their right to present no evidence were converted "into the machinery for . . .

548

[their] sure destruction." Chaffee v United States, supra, page 546.

My brothers also conclude that the law officer's advice was erroneous but find no prejudice to the accused's substantial rights in view of his other instructions on the doctrine of reasonable doubt and the compelling nature of the evidence of accused's guilt. I must record my stringent disagreement with this proposition.

The argument that the error was cured by the law officer's repeated admonitions to the court- █ martial that the accused's guilt must be established beyond a reasonable. doubt completely ignores the real vice of the questioned instruction. As pointed out above, a fair reading of its terms compels the conclusion it advises the court that no such doubt could exist if the *prima facie* evidence was unrebutted by the accused. In such a posture, the evidence was "sufficient to establish the fact." Therefore, the other exhortations in the instructions concerning the degree of proof required became meaningless. Further, there is nothing in the advice to the court which offsets the elimination of the presumption of innocence, nor did it inform the court that the accused were entitled to rest upon their plea of not guilty and had no duty to prove their blamelessness. Finally, assuming *arguendo* that the quoted instruction had no further effect than to set out an erroneous standard of proof, other statements concerning the proper standard can have no palliative effect. We have repeatedly rejected the argument that correct exposition of the doctrine of reasonable doubt was sufficient to cure the law officer's erroneous statement of a different measure of guilt in another part of his charge. United States v Noe, 7 USCMA 408, 22 CMR 198; United States v Rowan, 4 USCMA 430, 16 CMR 4; United States v Skonberg, 10 USCMA 57, 27 CMR 131. Unless these holdings are overruled today, I am at a loss to understand the majority's reasoning.

The second argument advanced by the author of the principal opinion is the assertion that the evidence of accused's guilt is compelling. Such a con-

sideration is not applicable where the error involved constitutes violation of a statutory or constitutional norm. Cf. Article 51(c), Code, supra, 10 USC § 851; Kotteakos v United States, 328 US 750, 66 S Ct 1239, 90 L ed 1557 (1946). Nor have we permitted the weight of the evidence to control in situations involving denial of military due process or violations of Article 31, Code, supra, 10 USC § 831. United States v Clay, 1 USCMA 74, 1 CMR 74; United States v Williams, 8 USCMA 443, 24 CMR 253. The instructions here breach even more fundamental concepts for the presumption of innocence and doctrines of reasonable doubt and burden of proof are among the most deeply embedded principles of our legal system. See Coffin v United States, 156 US 432, 15 S Ct 394, 39 L ed 481 (1895); Davis v United States, 160 US 469, 16 S Ct 353, 40 L ed 499 (1895).

Indeed, it is so basic in our procedures that the Supreme Court believed an instruction similar to the one here had the effect of depriving the defendant of his constitutional right to trial by jury. Chaffee v United States, supra. I am unable to find that such a substantial invasion of the accused's rights is so easily cured. To afford that effect to compelling evidence of guilt is to say that an accused, against whom we think the inferences are overwhelming, is not entitled to be heard before a properly instructed court or otherwise to a trial in compliance with the Code. This does not accord with our belief in government under the law rather than by men, and I cannot agree that the evidence of his guilt has such a pervasive effect.

I would reverse the decision of the board of review and authorize a rehearing.